[Crim. Nos. 7671, 7672, 7673.   Second Dist., Div. One.
May 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE GONZALES LUGO, Defendant and Appellant.

(Three Cases)

George Gonzales Lugo, in pro. per., and Robert L. Gardner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—By indictment (Superior Court case No. 231178; Appeal No. 7671) defendant Lugo was accused in five counts of unlawfully selling heroin, and one count of unlawfully agreeing to sell heroin and then selling a substance in lieu thereof. It was also alleged therein that he had been convicted previously of two felonies (narcotics and grand theft).

By another indictment (Superior Court case No. 234879; Appeal No. 7673) he was accused in three counts of unlawfully selling heroin. Said prior convictions were alleged therein.

By information (Superior Court case No. 234743; Appeal No. 7672) he and Mollie Valle were accused in two counts of unlawfully possessing narcotics. Said prior convictions were alleged therein. It was also alleged that Valle had been convicted previously of a felony (narcotics).

The allegations of prior convictions were denied.

Trial by jury in each of those cases was waived. Upon stipulation, the cases were consolidated for trial.

Lugo was adjudged guilty on all counts in each of the three accusations. The allegations of prior convictions were found to be true. (Valle was adjudged guilty on the two counts in the information where she was charged jointly with Lugo. The allegation of prior convictions as to her was found to be true.)

Lugo was sentenced to state prison, and it was ordered that the sentences on the counts in each accusation should run concurrently with the sentences on the other counts herein, and that the concurrent sentences on each accusation should run concurrently with the sentences on the other accusations.

Lugo appeals from the judgments rendered upon the indictments and the information.

He contends: That his trial counsel (Mr. Arthur—not present counsel) entered into an improper stipulation, regarding the police reports as hereinafter referred to, and he was thereby deprived of a fair trial and the right to be confronted by the witnesses. That his trial counsel failed to render effective assistance. There was no probable cause for entering his hotel room when he was arrested on the charges set forth in the information (No. 234743; Appeal No. 7672). That the judgment in the second indictment (No. 234879; Appeal No. 7673) is not supported by the evidence.

At the trial it was stipulated that the police reports contained in the district attorney's files might be read and considered by the trial judge with the same force and effect as though the witnesses listed therein "were deemed called, sworn, and testifying in the manner set forth on the reports."

The minutes in each of the three cases state that it was stipulated that "the cause is submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing . . . with each side reserving the right to offer additional evidence. . . ."

With respect to the two indictments, there were, of course, no transcripts of preliminary examinations. With respect to the information, the reporter's transcript of the trial proceedings does not show that there was a stipulation submitting that cause on the preliminary examination transcript. (The stipulation was that the police reports might be considered.)

It thus appears that no preliminary examination transcript is a part of the record on appeal.

The reporter's transcript herein indicates that nine police reports were referred to in the stipulation regarding police reports. It is to be noted, however, that only one police report is included in the records on appeal. That report pertains to the information charge against Lugo and Valle (Superior Court case No. 234743; Appeal No. 7672). With respect to that charge, police officers who participated in the arrest testified at the trial, and therefore, irrespective of that police report, the evidence regarding that charge was before the trial court.

It thus appears that eight of the police reports are not a part of the records on appeal and, of course, cannot be considered; and that (since officers testified as to matters in another report) it is not necessary to determine whether the one police report, which is a part of the record on appeal, was properly before the trial court. In *People* v. *Parra*, 193 Cal. App.2d 93 [13 Cal.Rptr. 828], there was a stipulation similar to the present one relative to submitting the cause on arrest reports from the district attorney's file, and those reports were not included as a part of the record on appeal. In that case the court held that there was no evidence in support of the judgment. The court said (p. 95) : "It is unfortunate, indeed, that the district attorney evidently put the evidence back in his brief case and walked away with it, and that the judge was not watching him. . . . We have had misgivings over the practice of submitting cases for decision on the reports of

police officers, thus foregoing the right of cross-examination and incurring the risk of being confronted with damaging hearsay evidence. It is a practice to be discouraged.''

In the present case there is no police report on appeal regarding any of the six counts in the first indictment (No. 231178, filed July 26, 1960; Appeal No. 7671), and therefore there is no police-report evidence on appeal in support of the judgment on that indictment. The question arises as to whether there was sufficient evidence in addition to the police reports. When the stipulation regarding the police reports was made, the deputy district attorney said that some of the reports, particularly as to indictment No. 231178, have not identified the defendant as the person with whom the transactions were consummated, and that he would ''call an officer later for testimony along this line.''

Officer Nieto testified as follows: He had testified before the grand jury with reference to John Doe No. 19, in connection with indictment No. 231178. He (witness) had made certain police reports (which were exhibited to him), and those reports pertain to certain transactions which were had on May 31, June 3, 9, 16, 17, and 28, 1960. The person referred to as John Doe 19, before the grand jury, is the defendant Lugo. On cross-examination, he testified that the first transaction he had with Lugo was on May 31, 1960. That about two days before the first transaction, he (witness) and a person by the name of ''Eddie'' were walking on Broadway (in Los Angeles) near Third Street and they met three other persons, one of whom was Lugo, and then all of them entered into a conversation. On May 31, 1960, while he (witness) was walking on Broadway, near Third Street, he saw Lugo who was in front of a market. After Lugo ''motioned to'' him, he (witness) went to Lugo and they had a conversation. Lugo asked him whether he had scored or connected. He replied, ''No.'' Lugo asked whether he was ''looking.'' He replied, ''Yes.'' Lugo said that he had half a gram. He replied that that was what he was looking for. That Lugo was the person from whom he purchased narcotics on May 31, 1960, and the subsequent dates. He had testified before the grand jury as to the sales made by Lugo on May 31 and on through June 28. All the purchases were made in the downtown area, and each purchase was for approximately $10. The reason he made so many purchases from defendant, without arresting him, was that if he did not buy on the numerous occasions when both

of them "happened to be around," then Lugo would become leery and would not sell to him.

Defendant testified, but his statements related principally to the arrest at his hotel room on October 6, 1960 (Information No. 234743; Appeal No. 7672), and he did not say anything regarding the sales on May 31 and on the five days in June as referred to by Officer Nieto.

The evidence was sufficient to support the judgment on the first indictment (No. 231178; Appeal No. 7671).

In the second indictment (No. 234879; Appeal No. 7673) there were three counts, relating to alleged sales on August 22, 23, and 29, 1960. The record on appeal does not include a police report or any evidence with respect to the first and second counts of that indictment, that is, regarding alleged sales on August 22 or 23. ▮▮ As stated in *People* v. *Parra*, *supra*, 193 Cal.App.2d 93 [13 Cal.Rptr. 828], where the police reports, upon which the causes were submitted by stipulation, are not in the record and there was no further evidence, the judgment as to those two counts is without evidentiary support. The principles of law stated in that case are applicable to those two counts. ▮▮ With respect to the third count in that indictment there was evidence other than the alleged missing police report. Officer Hairston, who was called as a witness by Lugo, testified that on August 29, 1960, he and Edward Pier met Lugo on Spring Street near the entrance to the Alexandria Hotel. Then the three of them went into the hotel lobby where he (witness) saw Pier hand money to Lugo, and he saw Lugo hand narcotics to Pier.

Defendant's testimony did not include any statement regarding the alleged sale on August 29.

The evidence was sufficient to support the judgment on the third count of the second indictment (No. 234879; Appeal No. 7673).

▮▮ ▮▮ In the information (No. 234743; Appeal No. 7672) there were two counts against Lugo and Valle jointly—the first count charged possession of heroin, and the second charged possession of amidone.

Officer Sanchez testified as follows: About September 28, 1960, he received information from Parole Officer Holiday that defendant Mollie Valle, a narcotic addict, probably was living with one Ramirez, who was a parolee under the direction of the parole officer. On October 6, 1960, the witness and other officers went to a hotel at 402 North Soto Street for the purpose of arresting Ramirez if they found him there.

He (witness) gave descriptions of Ramirez and Valle to the landlady, and asked her if they lived there. She replied in the affirmative and gave to the officers the apartment number of Ramirez and Valle. He (witness) and one of the officers went to the door of the apartment, and one officer (Officer Archibald) went (outside the hotel) to the window of the apartment. He (witness) knocked on the door of the apartment. Lugo eventually opened the door about 3 or 4 inches, and then he slammed the door closed. The officer (witness) kicked the door, and then the defendant or someone "behind the door" said, "Just a minute. I'll open it for you." The officer said, "We are police officers. Open the door." After a short hesitation, the officer said, "Hurry up and open the door." Then Lugo opened the door. At the time the officer (witness) entered the room, Officer Archibald (who was outside by the window) stuck his head in the window and said: "I got it all. She threw it out the window." At that time Officer Archibald was holding several multicolored balloons and a contraceptive which appeared to contain white powder. When Lugo opened the door he looked at the officer (witness), and the officer looked at him and recognized him as a person who was wanted for the sale of narcotics on a previous indictment. The officer knew Lugo and had seen him on numerous occasions associating with numerous narcotic addicts near Third Street and Broadway. He (witness) also had received information from two police officers that Lugo was wanted again for the illegal sale of narcotics. One of those officers from whom he received the information was Lieutenant Guindon who was in charge of the "buy program in the narcotic office." The officers who were at Lugo's apartment did not have a search warrant or a warrant of arrest. They arrested Lugo and Valle in the apartment about 7 p. m. on October 6, 1960.

Lugo testified, in part, as follows: Shortly before he was arrested he had narcotics in the apartment, which narcotics belonged to him. Before he was arrested he heard a knock on the door, and heard a man say, "Phone call." Since that statement did not "sound right for some reason," Lugo went to the window and opened the screen. Then he went to his shirt pocket (the shirt was on a chair) and "got what he had just bought" and handed it to Mollie Valle and said, "Throw it out of that window quick." He took narcotics from his shirt pocket—the narcotics were in a balloon. He said to Valle: "That must be the heat." He also said: "Here. Throw it

out." Then in response to the knock on the door, he opened the door "just a crack" and he saw a man who had a gun in his hand. He did not know the man, but he found out later that he was Officer Sanchez. Then Lugo slammed the door. The man started kicking the door. Lugo said, "Wait a minute. Let me get the chain off [the door]." Finally, he opened the door the second time, and Officer Sanchez entered the room "with a drawn gun."

Officer Archibald, who was outside the apartment, recovered objects which were thrown out the window. Some of the objects were (1) a plastic container in which there was a white powder substance, and (2) small colored balloons containing a white powder substance.

It was stipulated it would be deemed that a qualified chemist testified that the substance referred to in the police reports contained heroin and amidone.

There was probable cause for entering the apartment and arresting Lugo. The evidence was sufficient to support the judgment as to Lugo on the information (No. 234743); Appeal No. 7672).

Defendant was accorded a fair trial. His contention to the effect that his counsel did not properly represent him is not sustainable.

The judgment in case No. 7671 is affirmed. The judgment in case No. 7673 is affirmed as to count III of the indictment; and is reversed as to counts I and II. The judgment in case No. 7672 is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied June 8, 1962, and appellant's petition for a hearing by the Supreme Court was denied July 18, 1962.